IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

LISA M. CUTTER                                          PLAINTIFF

v.                      CIVIL NO. 16-5121

NANCY A. BERRYHILL,
Acting Commissioner, Social Security Administration[1]       DEFENDANT

**<u>MEMORANDUM OPINION</u>**

Plaintiff, Lisa M. Cutter, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for a period of disability, disability insurance benefits ("DIB") and supplemental security income ("SSI') under the provisions of Titles II and XVI of the Social Security Act ("Act"). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.**      **Procedural Background:**

Plaintiff protectively filed her application for DIB on May 2, 2013, and her application for SSI on May 7, 2013. (ECF No. 9, p. 41). In her applications, Plaintiff alleges disability due to residuals of cancer treatment in remission, post-traumatic stress disorder ("PTSD"), chronic obstructive pulmonary disease ("COPD"), and emphysema. (ECF No. 9, p. 253). Plaintiff

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

alleges an onset date of September 1, 2010. (ECF No. 9, pp. 41, 248). These applications were denied initially and again upon reconsideration. (ECF No. 9, pp. 81-144).

Thereafter, Plaintiff requested an administrative hearing on her denied applications, and this hearing request was granted. (ECF No. 9, pp. 163-68). Plaintiff's administrative hearing was held on August 22, 2014, in Fort Smith, Arkansas (ECF No. 9, pp. 56-80). Plaintiff appeared in person and was represented by Laura McKinnon. Id. Plaintiff and Vocational Expert ("VE") James Sprague testified at this hearing. Id. At the time of this hearing, Plaintiff was fifty-one (51) years old, which is defined as a "person closely approaching advanced age" under 20 C.F.R. §§ 404.1563(d), 416.963(d). As for her level of education, Plaintiff has a GED. (ECF No. 9, p. 61).

After this hearing, on February 6, 2015, the ALJ entered an unfavorable decision denying Plaintiff's applications for DIB and SSI. (ECF No. 9, pp. 38-51). In this decision, the ALJ found Plaintiff last met the insured status requirements of the Act through September 30, 2011. (ECF No. 9, p. 43, Finding 1). The ALJ also found Plaintiff had not engaged in Substantial Gainful Activity ("SGA") since September 1, 2010, Plaintiff's alleged onset date. (ECF No. 9, p. 43, Finding 2). The ALJ determined Plaintiff had the following severe impairments: essential hypertension, COPD, asthma, fibromyalgia, and depression with anxiety. (ECF No. 9, p. 43, Finding 3). Despite being severe, the ALJ determined these impairments did not meet or medically equal the requirements of any of the Listings of Impairments in Appendix 1 to Subpart P of Part 404 ("Listings"). (ECF No. 9, pp. 44-45, Finding 4).

The ALJ then considered Plaintiff's Residual Functional Capacity ("RFC"). (ECF No. 9, pp. 45-49, Finding 5). First, the ALJ evaluated Plaintiff's subjective complaints and found

her claimed limitations were not entirely credible. Id. Second, the ALJ determined Plaintiff retained the RFC to perform "light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except [she] is able to perform jobs with simple instructions." Id. The ALJ then determined Plaintiff had no Past Relevant Work ("PRW"). (ECF No. 9, p. 50, Finding 6). Based on Plaintiff's age, education, work experience, and RFC, the ALJ determined there were jobs existing in significant numbers in the national economy Plaintiff could perform, such as a cashier II, a price marker, and a motel housekeeper (ECF No. 9, pp. 50-51, Finding 10). The ALJ therefore determined Plaintiff had not been under a disability, as defined by the Act, from September 1, 2010, Plaintiff's alleged onset date, through February 6, 2015, the date of the ALJ's decision. (ECF No. 9, p. 51, Finding 11).

Thereafter, on March 4, 2015, Plaintiff requested a review by the Appeals Council (ECF. No. 9, pp. 36-37). The Appeals Council denied this request on March 31, 2016. (ECF No. 9, pp. 5-9). On June 1, 2016, Plaintiff filed the present appeal with this Court. (ECF No. 1). The parties consented to the jurisdiction of this Court on June 14, 2016. (ECF No. 7). This case is now ready for decision.

**II. Applicable Law:**

This Court's role is to determine whether substantial evidence supports the Commissioner's findings. Vossen v. Astrue, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. Teague v. Astrue, 638 F.3d 611, 614 (8th Cir. 2011). We must affirm the ALJ's decision if the record contains substantial evidence to support it. Blackburn v. Colvin, 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may

not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. Miller v. Colvin, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. Id.

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); See also 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Only if she reaches the final stage does the fact finder consider Plaintiff's age, education, and work experience in light of his residual functional capacity. See McCoy v.

4

Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982), abrogated on other grounds by Higgins v. Apfel, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

**III.     Discussion:**

Plaintiff raises three issues on appeal: 1) the ALJ failed to fully and fairly develop the record; 2) the ALJ erred in assessing the credibility of Plaintiff's subjective complaints; and 3) the ALJ erred in his RFC determination. (ECF No. 11).

### A.     Subjective Complaints and Credibility Analysis:

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 946, 966 (8th Cir. 2003).

The record contains substantial evidence supporting the ALJ's conclusion that Plaintiff's subjective complaints were not entirely credible. First, Plaintiff's regular treatment began long after her alleged onset date. For example, Plaintiff met with Dr. Kendrick on three occasions in 2010 near her alleged onset date. (ECF No. 9, pp. 332-35, 339-63). She did not follow up with a healthcare provider until she met with Dr. Morgan on February 27, 2012, regarding depression symptoms, and then did not seek further treatment until re-establishing

care with Dr. Morgan on January 24, 2013, for bronchitis, fatigue, adhesions, and medication refills. (ECF No. 9, pp. 374-81). See Forte v. Barnhart, 377 F.3d 892, 895 (8th Cir. 2004) (holding that lack of objective medical evidence is a factor an ALJ may consider); see also Moad v. Massanari, 260 F.3d 887, 892 (8th Cir. 2001) (regarding credibility, the Court noted Plaintiff had not sought treatment from any physician in the seven months prior to the administrative hearing). Next, Plaintiff continued to work throughout the relevant period. (ECF No. 9, pp. 49, 550). See Curran-Kicksey v. Barnhart, 315 F.3d 964, 969 (8th Cir. 2003) (holding that even part-time work is inconsistent with claims of disability); see also Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001) ("Seeking work and working at a job while applying for benefits, are activities inconsistent with complaints of disabling pain"). Finally, the ALJ considered Plaintiff's activities of daily living and determined that, while she had some limitation, she was able to perform personal care, drive unfamiliar routes, shop independently, handle personal finances, interact with her sons and their family, and visit with friends and neighbors. (ECF No. 9, pp. 44, 49).

The ALJ gave some credit to Plaintiff's allegations of pain and the effectiveness of her medications by limiting her RFC to work at the light exertion level. Therefore, although it is clear that Plaintiff suffers with some degree of limitation, she has not established that she is unable to engage in any gainful activity. Accordingly, the Court concludes that the ALJ provided good reasons for discounting Plaintiff's subjective complaints and that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not entirely credible.

**B.     RFC Determination and Medical Opinions:**

RFC is the most a person can do despite that person's limitations. 20 C.F.R. §§ 404.1545, 416.945. It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

Plaintiff specifically contends the ALJ's RFC determination should have included manipulative restrictions. (ECF No. 11, pp. 6-10). First, Plaintiff directs this court to the opinion of Dr. Brownfield. (ECF No. 11, pp. 8-9). The ALJ, however, only accepted Dr. Brownfield's opinion to the extent it was consistent with other evidence in the record that Plaintiff "was limited in prolonged or heavy exertion." (ECF No. 9, p. 48). Even if the ALJ gave weight to Dr. Brownfield's examination of Plaintiff's extremities, Dr. Brownfield's opinion appears to be that Plaintiff was without any limitation in her shoulders, elbows, wrists, or hands. (ECF No. 9, p. 396).

7

Second, Plaintiff argues her treating physician, Dr. Morgan, required her to wear a wrist brace. (ECF No. 9, p. 8). Plaintiff cites to a prescription paper signed by Dr. Morgan on October 28, 2014 which states, "[Plaintiff] was given a brace for her right wrist on [July 16, 2013]. This was treatment for arthritis/tendonitis." (ECF No. 9, p. 489). Dr. Morgan's treatment notes indicated that the brace was given at Plaintiff's request: "[Chief Complaints:] Problems with her hand; Right arm pain goes up to elbow; needs pft for SS; Onset three weeks ago. . . feels like it will break and needs a brace; Room 3 rs." (ECF No. 9, p. 467). Dr. Morgan's notes on that date also indicate three x-rays of Plaintiff's wrist were taken on the same day, but the records do not include the x-rays, nor do they include any discussion of these x-rays. (ECF No. 9, pp. 467-68). None of the evidence in the record states Plaintiff must use a wrist brace and no mention is made of Plaintiff wearing the brace, needing it adjusted, needing a new brace, or whether or not the brace was helpful, until Dr. Morgan's October 28, 2014, note, which essentially provides only that Plaintiff was given a brace, and Dr. Benafield's October 28, 2014, note that Plaintiff told him she wore the brace for her thumb pain. (ECF No. 9, pp. 489, 550).

Third, Plaintiff directs this Court to Plaintiff's treatment in October of 2014, with Drs. Morgan and Benafield. (ECF No. 11, p. 8). Dr. Morgan's treatment notes from October 8, 2014, indicate, however, "[Plaintiff] is getting adequate relief of her chronic pain." (ECF No. 9, p. 537). Dr. Morgan noted tenderness to palpation at the base of Plaintiff's thumb, at the carpal-metacarpal area, and laterally in Plaintiff's elbow. (ECF No. 9, p. 539). Dr. Morgan ordered x-rays of Plaintiff's right thumb and elbow which were both normal. (ECF No. 9, pp. 545-49). Dr. Morgan referred Plaintiff to an orthopaedic surgeon specializing in hands, wrists, elbows, and shoulders, Dr. Benafield. (ECF No. 9, pp. 549-51). Dr. Benafield diagnosed

Plaintiff with bilateral carpal tunnel syndrome and possible ulnar neuropathy at the elbow, bilateral thumb CMC arthritis, and bilateral mild lateral epicondylitis. (ECF No. 9, pp. 549-51). Dr. Benafield stated, in his notes, "I think we should start by working her up with a nerve conduction study. Based on those results we may have to discuss surgical options. If she has a surgical problem, then we might consider injections at the time of surgery into the thumb or the elbows. She is comfortable with this plan. We are going to make the referral. We will see her back in a month." (ECF No. 9, p. 551). The record does not contain a follow-up with Dr. Benafield, nor does the record contain the results of the nerve conduction studies he ordered. Neither Dr. Morgan nor Dr. Benafield, placed any limitation on Plaintiff's activities.

Finally, Plaintiff directs this Court to Plaintiff's treatment with Dr. Sampson. (ECF No. 11, pp. 8-9). The Court notes that the record contains no evidence of Plaintiff's treatment between October 28, 2014, and Plaintiff's treatment with Dr. Sampson on February 17, 2015, despite Dr. Sampson's treatment notes that she was initially seen by Dr. Sampson two weeks prior. (ECF No. 9, pp. 558-69). Dr. Sampson ordered an x-ray hand arthritis series which revealed "mild osteoarthritis of the left triscaphe joint," normal bilateral MCP joints, no erosions, normal bone mineralization, and "minimal osteoarthritis of the right interphalangeal joints with tiny marginal spurs, most notable involving the right index finger PIP and DIP joints." (ECF No. 9, p. 560). Dr. Sampson noted Plaintiff's range of motion in her shoulders, elbows, and wrists was "good." (ECF No. 9, pp. 567-68). Dr. Sampson considered the possibility Plaintiff could have rheumatoid arthritis and began Plaintiff on a trial of Prednisone to see if it improved her symptoms. (ECF No. 9, p. 568). Dr. Sampson, however, "Recommended getting some regular low-impact exercises," and did not place any limitations on Plaintiff's activity. (ECF No. 9, p. 568). Plaintiff followed up with Dr. Sampson on April

9

29, 2015, who again described Plaintiff's ROM in her shoulders, elbows, and wrists as "good," and described Plaintiff's tenderness to palpation in her hands as "mild." (ECF No. 9, pp. 577-80). Dr. Sampson took Plaintiff off Prednisone, started her on Methotrexate, and stated, "[Plaintiff] did notice a remarkable improvement in her hand pain and hip pain with prednisone." (ECF No. 9, p. 580).

The foregoing represents substantial evidence supporting the ALJ's RFC determination that Plaintiff was limited to the full range of unskilled light work. Plaintiff's treatment was routinely conservative with multiple physicians recommending that she treat her pain with medication management. See. Smith v. Shalala, 987 F.2d 1371, 1374 (8th Cir. 1993) (holding that treating physician's conservative treatment was inconsistent with Plaintiff's allegations of disabling pain). There were also long periods of time where Plaintiff failed to seek treatment. As discussed previously, in regard to the credibility of Plaintiff's subjective complaints, a failure to seek treatment for a specified period of time is inconsistent with complaints of disabling pain for that time. See Forte at 895. (holding that lack of objective medical evidence is a factor an ALJ may consider); see also Moad at 892. (8th Cir. 2001) (regarding credibility, the Court noted Plaintiff had not sought treatment from any physician in the seven months prior to the administrative hearing). In that same regard, Plaintiff continued to work during the relevant period, in a job which specifically required her to handle and manipulate bags of ice. (ECF No. 9, p. 550); Further, I note that a mere diagnosis is not sufficient to prove disability, absent some evidence to establish a functional loss resulting from that diagnosis. See Trenary v. Bowen, 898 F.2d 1361, 1364 (8th Cir. 1990).

It is clear Plaintiff suffers with some degree of limiting pain. This Court notes, however, that the inability to work without some pain or discomfort is not a sufficient reason to find a

Plaintiff disabled within the strict definition of the Act. The issue is not the existence of pain, but whether the pain a Plaintiff experiences precludes the performance of substantial gainful activity. See Thomas v. Sullivan, 928 F.2d 255, 259 (8th Cir. 1991).

The Court notes that in determining Plaintiff's RFC, the ALJ considered the treatment notes and medical opinions of many treating physicians, consultative examiners, and specialists, as well as those of the non-examining state agency consultants, and set forth the reasons for the weight given to the opinions. Renstrom v. Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012) ("It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians") (citations omitted); Prosch v. Apfel, 201 F.3d 1010 at 1012 (8th Cir. 2000) (the ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole). Based on the record as a whole, the Court finds substantial evidence to support the ALJ's RFC determination.

### C. Development of the Record:

Plaintiff argues the ALJ failed to develop the record, specifically that the ALJ should have sought another RFC assessment or general physical examination of Plaintiff. (ECF No. 13, pp. 13-14).

The ALJ owes a duty to a claimant to develop the record fully and fairly to ensure his decision is an informed decision based on sufficient facts. See Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004). However, the ALJ is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record. Whitman v. Colvin, 762 F.3d 701, 707 (8th Cir. 2014) (quoting Clark v. Shalala, 28 F.3d 828, 830-31 (8th Cir. 1994). While "[a]n ALJ should recontact a treating or consulting physician if a critical issue is

undeveloped," "the ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." Johnson v. Astrue, 627 F.3d 316, 320 (8th Cir. 2010) (quotation, alteration, and citation omitted).

Plaintiff contends the ALJ failed to fully and fairly develop the record because he did not seek out a Physical RFC Assessment from Plaintiff's treating physician, Dr. Morgan. (ECF No. 11). At the outset, however, I note that Plaintiff's counsel neither sought nor requested the ALJ seek a Physical RFC Assessment from Dr. Morgan. Nor was the ALJ required to request Dr. Morgan to provide a Physical RFC Assessment. Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007); Stormo v. Barnhart, 377 F.3d 801, 807-08 (8th Cir. 2004). Plaintiff then argues that because Dr. Morgan never provided a Physical RFC Assessment, the ALJ is compelled to give weight to Dr. Brownfield's opinion Plaintiff had limitations with her right hand. (ECF No. 11, p. 3). Plaintiff's argument is unavailing, however, because the ALJ specifically discounted Dr. Brownfield's opinion because it was at least partially inconsistent with Dr. Morgan's records. (ECF No. 9, p. 48). Although Dr. Benafield, an orthopaedic surgeon specializing in the hands, wrists, elbows, and shoulders, ordered a nerve conduction study on October 28, 2014, Plaintiff has not placed the results of that study into the record for consideration. (ECF No. 9, pp. 550-51). The evidence is clear that while Plaintiff was experiencing symptoms at least until October 28, 2014, Plaintiff's treating physician, Dr. Morgan, and her orthopaedist, Dr. Benafield, were still exploring the nature and extent of Plaintiff's symptoms at that time, and had not placed her on any additional limitations. Id. As discussed above, Plaintiff was also working part time bagging ice at the Dollar Store at the same time she was complaining of symptoms to Dr. Morgan on October 28, 2014. Id.

12

The ALJ had before him the evaluations and treatment records of numerous healthcare providers which, as more specifically set forth above, provided sufficient evidence for the ALJ to make an informed decision regarding Plaintiff's alleged physical and mental impairments. The Court also notes that other evidence in the record, including Plaintiff's own statements, constituted evidence regarding Plaintiff's physical and mental limitations, and that the existing medical sources contained sufficient evidence for the ALJ to make a determination regarding Plaintiff's alleged impairments. The Court therefore finds the ALJ satisfied his duty to fully and fairly develop the record.

**IV.     Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision is hereby affirmed. The undersigned further finds that the Plaintiff's Complaint should be, and is hereby dismissed with prejudice.

IT IS SO ORDERED this 3rd day of July, 2017.

/s/ *Erin L. Wiedemann*
HON. ERIN L. WIEDEMANN
UNITED STATES MAGISTRATE JUDGE